Anna Maria **PEREZ**, Mirta **Rivera**, Nicholas **Negron** and Constautio Hermedas, Plaintiffs,

v.

**UNITED STATES** of America, Thomas Jones and Juan Torres, Defendants.

United States District Court
S. D. New York.
June 11, 1963.

Arthur D. Spatt, New York City, for plaintiffs.

Robert M. Morgenthau, U. S. Atty. for the Southern Dist. of New York, for defendant United States; Patricia A. Garfinkel, Asst. U. S. Atty., of counsel.

FEINBERG, District Judge.

Defendant, United States Government, brings this motion to dismiss an action against Thomas Jones, a driver of a United States Post Office truck. Jones, while driving the Government truck, was involved in an accident with a motor vehicle owned and driven by defendant Juan Torres on November 3, 1962, in New York City. Plaintiffs, passengers in the Torres automobile, have brought an action in this Court against Jones, the United States, and Torres for damages sustained because of the alleged negligence of both drivers. Jurisdiction is based on the Federal Tort Claims Act, 28 U.S.C. § 1346(b),[1] since plaintiffs allege (and the Government concedes)[2] that the Government truck was being driven by Jones in the course of his employment by the United States.

The Government moves to dismiss the action brought against Jones, relying on 28 U.S.C. § 2679. That section states:

"(a) The authority of any federal agency to sue and be sued in its own name shall not be construed to authorize suits against such federal agency on claims which are cognizable under section 1346(b) of this title, and the remedies provided by this title in such cases shall be exclusive.

"(b) The remedy by suit against the United States as provided by section 1346(b) of this title for dam-

1. "[T]he district courts * * * shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages * * * for injury or loss of property, or personal injury or death caused by the negligent or

wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

2. Brief for Defendants, p. 1.

age to property or for personal injury, including death, resulting from the operation by any employee of the Government of any motor vehicle while acting within the scope of his office or employment, shall hereafter be exclusive of any other civil action or proceeding by reason of the same subject matter against the employee or his estate whose act or omission gave rise to the claim.

"(c) The Attorney General shall defend any civil action or proceeding brought in any court against any employee of the Government or his estate for any such damage or injury. The employee against whom such civil action or proceeding is brought shall deliver within such time after date of service or knowledge of service as determined by the Attorney General, all process served upon him or an attested true copy thereof to his immediate superior or to whomever was designated by the head of his department to receive such papers and such person shall promptly furnish copies of the pleadings and process therein to the United States attorney for the district embracing the place wherein the proceeding is brought, to the Attorney General, and to the head of his employing Federal agency.

"(d) Upon a certification by the Attorney General that the defendant employee was acting within the scope of his employment at the time of the incident out of which the suit arose, any such civil action or proceeding commenced in a State court shall be removed without bond at any time before trial by the Attorney General to the district court of the United States for the district and division embracing the place wherein it is pending and the proceedings deemed a tort action brought against the United States under the provisions of this title and all references thereto. Should a United States district court determine on a hearing on a motion to remand held before a trial on the merits that the case so removed is one in which a remedy by suit within the meaning of subsection (b) of this section is not available against the United States, the case shall be remanded to the State court.

"(e) The Attorney General may compromise or settle any claim asserted in such civil action or proceeding in the manner provided in section 2677, and with the same effect."

▮ The interpretation of this recently enacted statute (28 U.S.C. § 2679 (b–e) ) appears to be a question of first impression. The Government contends that the express purpose of Congress in enacting this legislation is to bar suits against Government driver employees in their individual capacity when involved in an accident while in the scope of their employment. Plaintiffs contend that the purpose of the amendment is only to avoid duplication of actions in various jurisdictions, e. g., an action against the United States in the federal court and an action against the driver in the state court arising out of the same occurrence.

▮ Careful examination of the statute and its legislative history indicates that the Government's position is correct, and that its motion to dismiss against the Government driver should be granted. Section 2679(b), quoted above, states that in the factual situation concededly present here, the remedy against the United States "shall * * * be exclusive of any other civil action * * *." The meaning of "exclusive" in this context is made clear by the legislative history of the statute. House Report No. 297, accompanying the bill ultimately enacted, states that the bill "would exclude suits against employees in their individual capacities on the same claims." [3] The practical motivation behind passage of the bill was to insure that "suits against

3. H.R.Rep.No.297, 87th Cong., 1st Sess. 4 (1961).

the employee-drivers will be tried as tort claims actions asserted against the United States." [4]  This method of insulating the federal employee-driver against possible liability was chosen after consideration of other proposed alternatives. For example, bills to provide government indemnification for the driver or liability insurance for the driver paid for by the Government [5] were discarded in lieu of the statute eventually passed. Both of the discarded bills apparently assumed that prosecution of a suit against the driver in his individual capacity was permissible. It seems clear that the third alternative adopted was calculated to achieve a more effective result by precluding a suit against the driver in the first instance. Further reference to House Report No. 297 confirms this conclusion. That Report also stated (at pp. 2–5):

> "The provisions of H.R. 2883 are intended to meet the existing problem of personal liability of U. S. employees who must drive motor vehicles as a part of their jobs. The Federal Tort Claims Act made it possible for individuals to bring tort actions against the Government in the Federal courts. However, the provisions of that act as now codified in title 28 of the United States Code do not afford a Government employee relief in those instances where an action is brought against him alone. * * * The result of the situation is that all of the persons who operate vehicles for the United States face the possibility of being sued as individuals for incidents which occur while they are performing duties in behalf of the Government.

> "Each session of the Congress a number of private bills are introduced to grant relief to individual employees who have been proceeded against in this manner. Each of these bills is referred to the Committee on the Judiciary with the result that this committee is fully aware of the problem and the inherent unfairness of the situation. The facts of these cases demonstrate that both from the standpoint of judicial procedure, and from the standpoint of justice to employees, the amendments proposed in the bill should be enacted. The number of suits filed against individual Federal drivers is a comparatively small number as compared to the number of matters handled under the terms of the tort claims provisions of title 28, and those cases which have resulted in judgments against the drivers and have become the subjects of private bills have generally involved small amounts. Under normal circumstances the injured party prefers to bring his action against the United States rather than against a man of limited resources who happened to have been driving the Government vehicle. As would be expected, when the action has been brought against the individual driver the judgments involved have been for relatively small amounts, but those judgments work a real hardship on the employee. While the Government has adopted a general policy of affording counsel and representation to employees sued in this manner, this does not help when a judgment has been entered against the man. The employee is then faced with the alternative of settling the judgment or of prosecuting an appeal. Because of the additional expense and difficulty involved with an appeal, the employee is often forced to settle the matter by paying the judgment.

> \*    \*    \*    \*    \*    \*

> "This problem concerning the liability of its employees is a matter

---

4. *Ibid.*

5. Ibid; see letter from Franklin Floete, Administrator of General Services Administration, to Sam Rayburn, Speaker of the House of Representatives, Jan. 9, 1961, attached to H.R.Rep.No.297 at 7–8.

of direct concern to the United States. The threat of this sort of liability to all Government employees who must operate vehicles in the course of their employment has an adverse effect on the efficiency and morale of those employees.

\* \* \* \* \* \*

"Since the Government must continue to utilize motor vehicles to render its required services, it must be recognized that those vehicles must be operated by competent and reliable drivers. The threat of personal liability hardly aids in attracting and holding the responsible sort of employee required for such work.

\* \* \* \* \* \*

"This committee feels that this approach provides for the practical resolution of this lack in the law concerning the liability of Government drivers, and has the additional merit of benefiting the Government by increasing the morale of its employees by removing the threat of such suits against them in their individual capacities.

\* \* \* \* \* \*

"The provisions of H.R. 2883 make specific reference to section 1346(b) concerning tort actions against the Government, and further reference is made to an employee's estate so that the remedy against the United States is made exclusive as to any action against the employee's estate as well as against the employee.

\* \* \* \* \* \*

"Subsection (d) requires that any such action brought in a State court shall be removed before trial to the U. S. district court for the district and division for the place in which the action is pending. In the U. S. district court the proceedings are to be deemed a tort section (sic) against the United States under title 28. After removal, if the U. S. dis-

trict court should determine on a hearing on a motion to remand held before trial on the merits that there is no remedy within the meaning of subsection (b) against the United States, the case shall be remanded to the State court. This provides for a prompt determination of the question of whether a remedy exists within the framework of the Federal tort claims provision of title 28. The express recognition of a right to have a case remanded for further proceedings in the State court in the event of a determination that there is no remedy within the meaning of subsection (b) assures the continuity of the proceeding so that the applicable statute of limitations will not run and have the effect of barring a remedy against the individual driver where he is found not to have been entitled to the protection contemplated in this bill."

The conclusion that the suit against the driver should be dismissed is further reinforced by construction of analogous statutes, which were also referred to in House Report No. 297. Thus, 46 U.S.C. § 745 states:

"[W]here a remedy is provided by this chapter [Suits in Admiralty Act] it shall hereafter be exclusive of any other action by reason of the same subject matter against the agent or employee of the United States \* \* \* whose act or omission gave rise to the claim. \* \* \*"

This statute provides that the remedy against the United States for suits arising out of the actions of Government employees or agents, with respect to vessels operated by or for the Government, is exclusive of any other action. The statute has been construed to require dismissal against the Government agent when that agent is acting in the course of his employment. *E. g.*, Williams v. United States, 228 F.2d 129, 132–33 (4 Cir. 1955), *cert. denied*, 351 U.S. 986,

76 S.Ct. 1054, 100 L.Ed. 1499 (1956); Cohen v. United States, 195 F.2d 1019 (2 Cir. 1952); Richardson v. American President Lines, Ltd., 144 F.Supp. 641 (S.D.N.Y.1956).

The result is the same in another context under 28 U.S.C. § 1498, which provides the owner of a patent with an infringement action against the United States in the Court of Claims, when an invention covered by the patent is used or manufactured by or for the Government without permission of the patentee. Under that statute, an agent-contractor of the Government, who infringes a patent while processing goods for the Government only, is relieved of liability, and the patentee's sole remedy is a suit against the Government. See, *e. g.*, Richmond Screw Anchor Co. v. United States, 275 U.S. 331, 343–44, 48 S.Ct. 194, 72 L.Ed. 303 (1928); Bereslavsky v. Esso Standard Oil Co., 175 F.2d 148 (4 Cir. 1949).

Plaintiffs urge that "exclusive of any other civil action" means that the Government and its driver may be sued in one action together but not in different actions. This position is clearly contrary to the legislative history quoted above.

Plaintiffs rely on this statement in Senate Report No. 736:

"The purpose of the amendments is to provide that a civil action or proceeding commenced in a State court against an employee of the Government may not be removed to a district court of the United States without the consent of the plaintiff." [6]

This reliance is wholly misplaced. The Senate Report referred to a recommendation by the Senate committee considering the bill that there be added to the House bill (H.R. 2883) a provision that a suit commenced by a plaintiff against a Government driver in a state court could not be removed to the federal court without plaintiff's consent. A provision to this effect had been part of the bill which passed both the House and Senate in the previous session of Congress.[7] However, that bill had been vetoed by the President because the bill included such a provision.[8] In 1961, Senate Report No. 736, from which plaintiffs quote and on which they rely, was another attempt by the Senate committee to insert into the House bill the provision which had caused its veto the year before. However, this

---

6. S.Rep.No.736, 87th Cong., 1st Sess. (1961), reprinted in 1961 U.S.Code Cong. & Ad.News pp. 2784–85.

7. H.R. 7577, 86th Cong., 2d Sess. (1960).

8. The President's veto message, dated June 11, 1960, stated:

"I return herewith, without my approval, H.R. 7577, to amend title 28, entitled 'Judiciary and Judicial Procedure,' of the United States Code, to provide for the defense of suits against Federal employees arising out of their operation of motor vehicles in the scope of their employment, and for other purposes.

"As originally introduced, this legislation provided that when a Government driver is sued in a State court on a claim resulting from his operation of a motor vehicle while acting within the scope of his employment, such action should be removed to the appropriate U. S. district court. There it would become an action against the United States under the Fed-

eral Tort Claims Act and be the plaintiff's exclusive judicial remedy. Government drivers would thus cease to be defendants and would be relieved of personal liability in such cases. These are desirable objectives.

"The bill was amended, however, to require the consent of the plaintiff before any such action could be removed to a Federal court. This amendment is unfortunate, for any plaintiff, by refusing to give his consent, could prevent the conversion of the action to one under the Federal Tort Claims Act and thus thwart the sound purposes of the original bill. The amendment also makes the bill inconsistent internally and could give rise to needless litigation.

"Although unwilling, therefore, to approve this bill, I would gladly sign new legislation corresponding to H.R. 7577 as first passed by the House of Representatives." 1961 U.S.Code Cong. & Ad.News p. 2797.

attempt was unsuccessful, and the bill in its finally enacted form contains no reference to any permissive control of removal by a plaintiff who has sued the driver in his individual capacity in a state court.[9] In short, plaintiffs' reliance on legislative history is misplaced.[10]

Dismissal of plaintiffs' action against Jones, of course, still leaves them with their action against the United States. Plaintiffs' papers do not indicate why they wish to cling to their remedy against Jones rather than to proceed against the Government. If their purpose is to harass Jones, this is, of course, the very thing that Congress wished to avoid. If their purpose is to insure obtaining the testimony of Jones in the normal course of pre-trial procedure or at trial, I assume that the Government would interpose no obstacles. Of course, the question will be raised whether any testimony from Jones, appearing as a witness rather than as a party, is binding upon the Government. This, however, is a matter which can, and should be, determined by the trial judge, and plaintiffs are free to obtain all relevant evidence by deposing Jones.

Therefore, for the reasons set forth above, defendant's motion to dismiss the action against Thomas Jones is hereby granted. This is an order; no further order is necessary.

---

9. In fact, Senator Keating, on the Senate floor, set out his objections to any such amendment which would give plaintiffs permissive control over removal of such suits from the State court to the Federal court. 107 Cong.Rec. 18500 (1961). He stated that the purpose of the bill, *i. e.*, "to make the United States wholly liable for any damages caused by its employees in the course of their duties and to protect the employee from any dual liability," would be frustrated by amending the statute to give plaintiffs control over removal, and, in addition, such an amendment would be inconsistent with the original federal jurisdiction scheme under the Federal Tort Claims Act. Ibid. He therefore proposed a compromise amendment to the bill, and stated that "[my] amendment would not require the plaintiff's consent to removal of suits against individual employees, but it would re-quire the Attorney General—as a condition for removal—to certify that the employee was acting within the scope of his employment at the time of the incident out of which the suit arose." Ibid. Senator Keating's amendment was unanimously adopted on the floor of the Senate, and exactly corresponds to 28 U.S.C. § 2679(d), *supra*, in is finally enacted form.

10. Even if the consent to removal provision had been inserted in the bill, there is a question whether it would be determinative of the issue in this case, which is whether plaintiffs can sue a driver in his individual capacity in the federal courts. However, since the provision did not pass, it is not necessary to deal with this question and, in fact, the failure of the provision to pass is further support, in assessing the legislative history, for the position taken by the Government.